UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LORI D. SHAVLIK, | CASE NO. C18-1094JLR |
| Plaintiff, | ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION TO REMAND |
| v. | |
| SNOHOMISH COUNTY SUPERIOR COURT, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Before the court is Defendants Snohomish County ("the County"), Snohomish County Superior Court ("the Superior Court"), Judge Bruce Weiss, Andrew E. Alsdorf, Craig S. Matheson, Philip G. Sayles, and the Sayles Law Firm, PLLC's (collectively, "Defendants") joint motion to dismiss or grant judgment on the pleadings on *pro se* Plaintiff Lori D. Shavlik's claims, with the exception of her claim under Washington State's Public Records Act ("PRA"), RCW ch. 42.56.  (Mot. (Dkt. # 12).)  Additionally,

the County moves to remand Ms. Shavlik's PRA claim to state court. (*Id.*) Ms. Shavlik

opposes Defendants' motion. (Resp. (Dkt. # 15).) Defendants filed a reply. (Reply (Dkt.

# 16).) The court has considered the motion, the parties' submissions concerning the

motion, the relevant portions of the record, and the applicable law. Being fully advised,[1]

the court GRANTS Defendants' motion to dismiss all of Ms. Shavlik's claims except for

her PRA claim. As set forth below, the court GRANTS Ms. Shavlik leave to amend

certain claims within 15 days of the date of this order. Finally, the court GRANTS the

County's motion to remand Ms. Shavlik's PRA claim.

## II.  BACKGROUND

Ms. Shavlik's claims arise from two events: PRA requests she filed with the

County in September 2015 and a murder trial she observed in the Superior Court in May

2018. (*See* Compl. (Dkt. # 6-1).)

1.  <u>PRA Claims Against Snohomish County</u>

On September 13, 2015, Ms. Shavlik filed seven PRA requests with the County.

(Compl. at 4-7.[2]) She filed an eighth PRA request on November 10, 2015. (*Id.* at 7-8.)

Most of Ms. Shavlik's PRA requests sought emails pertaining to herself and other

individuals. (*Id.* at 4-8.) Ms. Shavlik alleges that the County delayed her requests

without cause, failed to adequately search for the requested records, and closed her

requests without notice, in violation of the PRA. (*Id.* at 8.)

---

[1] No party requests oral argument on Defendants' motion (*see generally* Mot.; Resp.), and the court has determined that oral argument would not be of assistance in deciding the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The court cites the page number at the bottom left-hand corner of the complaint.

2. Claims Against Judge Weiss

The remainder of Ms. Shavlik's claims relate to the criminal prosecution of John Reed in the Superior Court ("the Reed trial"). Ms. Shavlik states that in March 2017, she "began her career as an investigative reporter/blogger, specifically covering Washington State [c]ourt proceedings." (*Id.*) In May 2018, Ms. Shavlik intended to cover the Reed trial "as a member of the press." (*Id.* at 9.)

During the trial, Ms. Shavlik sought permission from Judge Weiss, the judge presiding over the Reed trial, to film the proceedings. (*Id.* at 10.) Ms. Shavlik alleges that on May 17, 2018, Judge Weiss "officially gave [her] permission to videotape" the trial. (*Id.*) Ms. Shavlik further alleges that, the next day, Judge Weiss revoked her permission to film the trial and entered an order allowing only King 5, a local news outlet, to record or photograph the proceedings. (*Id.*) Ms. Shavlik states that on the afternoon of May 18, 2018, after King 5 personnel left Judge Weiss's courtroom, she began filming the trial. (*Id.* at 12.)

On May 31, 2018, Judge Weiss entered an order to show cause why Ms. Shavlik should not be held in contempt for filming the Reed trial. (OSC (Dkt. # 12-1) at 1.) In the show-cause order, Judge Weiss stated that he ruled at the beginning of the trial that "only one media outlet would be allowed to record the proceedings during the trial"; that he "ordered Ms. Shavlik not to record or photograph the proceedings as she could not provide a feed to other media personnel"; and that he found "good and sufficient reason for [Ms. Shavlik] to show cause why she should not be held in contempt for violating the Court's Order regarding filming and photographing the trial." (OSC at 1-2.) Judge

Weiss ordered Ms. Shavlik to appear at a show-cause hearing on June 13, 2018.  (*Id.* at 2.)  Ms. Shavlik did not appear at the hearing.[3]  (Compl. at 13.)

Ms. Shavlik asserts state and federal claims against Judge Weiss related to the show-cause order and hearing.  She alleges that Judge Weiss violated her rights under the First, Sixth, and Fourteen Amendments.  (*Id.* at 13.)  She also claims that Judge Weiss violated Washington Court General Rule 16, which governs video recording by the news media during state court proceedings, and her right to privacy under Article I, Section 7 of the Washington State Constitution.  (*Id.* at 11, 13); *see also* Wash. Ct. Rules, GR 16.  Finally, Ms. Shavlik alleges that Judge Weiss violated RCW 5.68.010, which prohibits a court from compelling a member of the media to disclose sources and work product, except in limited circumstances.  (*Id.* at 13); *see also* RCW 5.68.010.

Ms. Shavlik seeks declaratory and injunctive relief against Judge Weiss.  (Compl. at 1, 17, 19.)  She requests "an injunction . . . to vacate and enjoin any [o]rder entered in violation of [her] rights" under state and federal law.  (*Id.* at 21.)  She further seeks a "declaratory ruling . . . that Judge Bruce Weiss violated [her] right to be left alone in private affairs, right to not be threatened as a result of engaging in First Amendment [activities], right to [a] meaningful opportunity to be heard in violation of the 14th Amendment, [and] 6th Amendment right to counsel."  (*Id.* at 20-21.)

//

//

---

[3] No party specifies whether a finding of contempt was entered in Ms. Shavlik's absence.  (*See generally* Compl.; Mot.; Resp.)

ORDER - 4

3. <u>Claims Against Mr. Alsdorf, Mr. Matheson, Mr. Sayles, and the Sayles Law Firm</u>

Ms. Alsdorf and Mr. Matheson are the Snohomish County prosecutors who prosecuted Mr. Reed. (Mot. at 2.) Mr. Sayles, a lawyer from the Sayles Law Firm, was Mr. Reed's defense attorney. (*Id.*; *see also id.* at 12.) Ms. Shavlik alleges that, during Mr. Reed's trial, she witnessed Mr. Alsdorf, Mr. Matheson, and Mr. Sayles "tampering with a witness." (Compl. at 12.) She states that she captured the alleged witness tampering on video. (*Id.*) Ms. Shavlik alleges that during this incident, Mr. Alsdorf and Mr. Sayles "[gave] her the evil eye," causing her to "believe[] that her life was in danger." (*Id.*) Ms. Shavlik claims that Mr. Alsdorf and Mr. Matheson then proceeded to "act[] in concert" with Mr. Sayles "to take criminal action" against her on account of her "1st Amendment protected activity." (*Id.* at 14.)

Ms. Shavlik brings a number of claims against these Defendants. Ms. Shavlik first alleges that Mr. Alsdorf, Mr. Matheson, and Mr. Sayles retaliated against her on account of her efforts to film the Reed trial, in violation of the First Amendment, and violated her right to privacy under Article I, Section 7 of the Washington State Constitution. (*Id.* at 15) Ms. Shavlik also brings claims for barratry, alleging that these three Defendants acted in concert with Judge Weiss to "punish" her for her First Amendment activities. (*Id.*) Finally, Ms. Shavlik brings claims against Mr. Sayles and the Sayles Law Firm for "abuse of process," intentional infliction of emotional distress, and "deceptive trade violations." (*Id.* at 17-19.) Ms. Shavlik seeks compensatory and punitive damages from

//

Mr. Sayles. (*Id.* at 21.) She does not specify the relief she seeks against Mr. Alsdorf, Mr. Matheson, or the Sayles Law Firm. (*See generally id.*)

### 4. Claims Against the County and the Superior Court

Ms. Shavlik's claims against Snohomish County and the Superior Court are difficult to discern. Ms. Shavlik appears to allege that the Superior Court and the County improperly allowed the other Defendants to conspire to retaliate against Ms. Shavlik on account of her efforts to film the Reed trial. (*Id.* at 13-14.) She claims that the Superior Court "deliberately and knowingly violated [her] rights secured under [General Rule] 16, [RCW 5.68.010], and the 1st and 14th Amendments." (*Id.* at 13.) She seeks "a declaratory ruling . . . that . . . Snohomish County Superior Court [b]y and through . . . Judge Bruce Weiss" violated her rights to privacy under Article I, Section 7 of the Washington State Constitution, free expression under the First Amendment, counsel under the Sixth Amendment, and due process under the Fourteenth Amendment. (*Id.* at 20-21.) Ms. Shavlik also requests that the court issue "a writ of certiorari and prohibition" to the Superior Court "to vacate and enjoin any [o]rder entered in violation of [her] rights." (*Id.* at 21.)

**B.    Procedural History**

On July 2, 2018, Ms. Shavlik filed her complaint in Skagit County Superior Court. (*Id.* at 1.) On July 26, 2018, Defendants removed the action to federal court on the basis of federal question jurisdiction. (Not. of Removal (Dkt. # 1).) On August 13, 2018, Snohomish County, Snohomish County Superior Court, Judge Weiss, Mr. Alsdorf, and

//

Mr. Matheson filed their answer to Ms. Shavlik's complaint.  (Ans. (Dkt. # 8).)  On

October 1, 2018, Defendants filed this joint motion to dismiss.  (Mot.)

In their motion, Defendants move the court to dismiss under Federal Rule of Civil

Procedure 12(b)(6), or grant judgment on the pleadings under Federal Rule of Civil

Procedure 12(c) on, all of Ms. Shavlik's claims except for her PRA claim.  (*Id.* at 1.)

Defendants argue that Ms. Shavlik's claims are barred by the doctrines of judicial,

prosecutorial, and litigation immunity and are insufficiently pleaded.  (*Id.* at 2-3.)  Ms.

Shavlik responds that the federal pleading standards set forth in *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 554 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), are not

applicable in state court, where she originally filed her complaint, and seeks leave to

amend.  (Resp. at 5-7.)  The court now turns to Defendants' motion.

## III.    DISCUSSION

### A.    Judicial Notice

At the outset, the court addresses Defendants' request that the court take judicial

notice of the show-cause order that Judge Weiss entered on May 31, 2018.[4]  (*See* Mot. at

4-5; OSC.)  Generally, a district court may not consider material beyond the pleadings

when deciding a motion to dismiss for failure to state a claim or a motion for judgment

on the pleadings.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001); *Clayton v. Air &*

*Liquid Sys. Corp.*, No. C18-0748JLR, 2018 WL 3496634, at *2 (W.D. Wash. July 20,

_____

[4] Ms. Shavlik does not attach the show-cause order to her complaint.  (*See generally*
Compl.)  Defendants submit the order as an exhibit to their motion to dismiss.  (*See* Mot. at 5;
OSC.)

2018) ("If the court considers matters outside of the pleadings, the motion becomes one for summary judgment.").  A court may, however, consider matters subject to judicial notice.  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *see also* Fed. R. Evid. 201(b)(2).  A court may take judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)) (internal quotation marks omitted).

The show-cause order satisfies those requirements.  The order has "a direct relation to matters at issue," *Bias*, 508 F.3d at 1225, because Ms. Shavlik premises most of her claims upon the order's alleged illegality.  (*See generally* Compl.)  Moreover, Ms. Shavlik does not oppose the court's taking judicial notice of the order.  (*See generally* Resp.)  Accordingly, the court GRANTS Defendants' request to take judicial notice of the show-cause order.

**B.    Legal Standards**

Defendants' motion invokes two different Federal Rules of Civil Procedure.  Mr. Sayles and the Sayles Law Firm move to dismiss Ms. Shavlik's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (Mot. at 3); *see also* Fed. R. Civ. P. 12(b)(6).  In contrast, the County, the Superior Court, Judge Weiss, Mr. Alsdorf, and Mr. Matheson move for judgment on the pleadings under Rule 12(c), because they have already answered Ms. Shavlik's complaint.  (Mot. at 2-3); *see also*

//

Fed. R. Civ. P. 12(c) (providing that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings").

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this rule is to "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A motion under [Rule] 12(b)(6) tests the formal sufficiency of the statement of claim for relief." *Palms v. Austin*, C18-0838JLR, 2018 WL 4258171, at *4 (W.D. Wash. Sept. 6, 2018) (quoting *Fednav Ltd. v. Sterling Int'l*, 572 F. Supp. 1268, 1270 (N.D. Cal. 1983)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When considering a Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and must accept all well-pleaded allegations of material fact as true, *see Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998). However, the court need not accept as true a legal

conclusion presented as a factual allegation. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 550).

The standard for dismissing claims under Rule 12(c) is "substantially identical" to the Rule 12(b)(6) standard set forth in *Iqbal*, 556 U.S. at 678. *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir. 2012) (internal quotation marks and citation omitted); *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) ("Although *Iqbal* establishes the standard for deciding a Rule 12(b)(6) motion, we have said that Rule 12(c) is functionally identical to Rule 12(b)(6) and that the same standard of review applies to motions brought under either rule.") (internal quotation marks and citation omitted). This is because, "under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez*, 683 F.3d at 1008 (internal quotation marks and citation omitted).

Ms. Shavlik contends that *Iqbal* does not govern the sufficiency of pleadings filed in state court. (Resp. at 6-7.) Ms. Shavlik is correct insofar as the "[Washington] Supreme Court does not follow *Twombly* and *Iqbal*." *Handlin v. On-Site Manager, Inc.*, 351 P.3d 226, 228 (Wash. Ct. App. 2015) (citing *McCurry v. Chevy Chase Bank, FSB*, 233 P.3d 861, 863 (Wash. 2010)). However, because Defendants removed Ms. Shavlik's case to federal court, the federal pleading standards set forth in *Iqbal* govern the sufficiency of her complaint. *See Smith v. Bayer Corp.*, 564 U.S. 299, 304 n.2 (2011) ("[F]ederal procedural rules govern a case that has been removed to federal court."); *Harris v. City of Seattle*, C02-2225MJP, 2003 WL 1045718, at *2 (W.D. Wash. Mar. 3, 2003) (holding that in a case removed to federal court, "federal law, not state law,

governs with what specificity [the p]laintiff must plead in order to survive a 12(b)(6) motion").

Because Ms. Shavlik is *pro se*, the court must construe her complaint liberally when evaluating it under the *Iqbal* standard. *See Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1011 (9th Cir. 2011). Although the court holds the pleadings of *pro se* plaintiffs to "less stringent standards than those of licensed attorneys," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong," *Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995). Accordingly, the court should "not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997). Nevertheless, "[l]eave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts, and should be granted more liberally to *pro se* plaintiffs." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) (quoting *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003)) (internal quotation marks omitted).[5]

C.    **Ms. Shavlik's Federal Constitutional Claims**

As a threshold matter, the court addresses the form of Ms. Shavlik's federal constitutional claims. Ms. Shavlik brings federal constitutional claims against the County, the Superior Court, Judge Weiss, Mr. Alsdorf, and Mr. Matheson, all of which

---

[5] When a court grants judgment on the pleadings on a Rule 12(c) motion, it may grant the plaintiff leave to amend. *See, e.g.*, *Gray v. Romero*, No. 1:13-cv-01473-DAD-GSA-PC, 2017 WL 1166287, at *2 n.1 (E.D. Cal. Mar. 28, 2017) (granting *pro se* plaintiff leave to amend on 12(c) motion).

are state actors. Ms. Shavlik also alleges that Mr. Sayles and the Sayles Law Firm acted in concert with these Defendants to violate her constitutional rights. (*See* Compl. at 2.)

Generally, 42 U.S.C. § 1983 is the proper vehicle for a plaintiff to challenge the constitutionality of actions by government officials or private individuals acting under color of state law. *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir. 2004) ("Section 1983 creates a cause of action for the vindication of federal rights."); *see also* 42 U.S.C. § 1983. Although Ms. Shavlik does not expressly invoke Section 1983, the court liberally construes her complaint and infers that she asserts her federal constitutional claims under that statute. *See Johnson v. City of Shelby*, --- U.S. ---, 135 S. Ct. 346, 347 (2014) (holding that a plaintiff alleging violations of constitutional rights need not expressly invoke Section 1983 in order to state a claim); *see also Hass v. Cty. of Sacramento Dep't of Support Servs.*, No. 2:13-cv-01746 JAM KJN, 2015 WL 351665, at *2 (E.D. Cal. Jan. 23, 2015) (liberally construing a *pro se* plaintiff's federal constitutional claims as brought under Section 1983). The court now turns to the merits of Defendants' motion.

### 1. Federal Constitutional Claims Against the County and the Superior Court

Defendants argue that the court must dismiss Ms. Shavlik's Section 1983 claims against the County and the Superior Court because she has not sufficiently pleaded a claim for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978). (Mot. at 8-9.) Although a litigant may bring suit against local government units under Section 1983, such defendants "cannot be held liable . . . on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Rather, a

municipality may be held liable for its officers' allegedly unconstitutional conduct only if the plaintiff demonstrates that he or she has suffered an injury resulting from the "execution of a government's policy or custom." *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) (quoting *Monell*, 436 U.S. at 694). Specifically, to establish a Section 1983 claim against a municipality, a plaintiff must prove that: (1) she was deprived of a constitutional right, (2) the municipality had a custom or policy, (3) the municipality's custom or policy amounts to deliberate indifference to her constitutional rights, and (4) the custom or policy was the moving force behind the violation of her constitutional right. *See id.*

Ms. Shavlik fails to allege facts sufficient to support a *Monell* claim against the County and the Superior Court. To begin, Ms. Shavlik's complaint puts forth a theory of liability based on a theory of *respondeat superior*. She appears to argue that the County and the Superior Court are liable because Mr. Alsdorf, Mr. Matheson, and Judge Weiss, all of whom are officially affiliated with the County, allegedly violated her rights under the First Amendment and other constitutional provisions. However, she pleads no facts that would suggest that the County or the Superior Court had a custom or policy amounting to deliberate indifference of the rights she claims were violated. Rather, her complaint focuses on a single show-cause order and a contempt hearing she apparently chose not to attend. (*See generally* Compl.)

Moreover, Ms. Shavlik does not articulate a cognizable claim that she was deprived of a constitutional right. As to her First Amendment claim, Ms. Shavlik appears to allege that Judge Weiss, Mr. Alsdorf, Mr. Matheson, and Mr. Sayles acted in concert

to retaliate against her for filming the Reed trial, which she frames as an exercise of her First Amendment rights. (*See* Compl. at 14.) To establish a First Amendment retaliation claim, a plaintiff show that: (1) a defendant took some form of state action that would deter a reasonable person from engaging in First Amendment activities, and (2) the "desire to cause the chilling effect was a but-for cause of the defendant's action." *Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006); *see also Block v. Wash. State Bar Ass'n*, No. C15-2018RSM, 2016 WL 1258387, at *6 (W.D. Wash. Mar. 31, 2016).

The court concludes that, even liberally construed, Ms. Shavlik's complaint fails to allege a cognizable First Amendment retaliation claim. Ms. Shavlik alleges no facts that suggest that Judge Weiss entered the show-cause order for any reason other than that stated in the order itself: she filmed the Reed trial in violation of Judge Weiss's order limiting videography to a single news outlet. (*See* OSC.) Nor does she allege facts sufficient to show that Defendants harbored a retaliatory motive or acted in a manner that would deter a reasonable person from engaging in protected First Amendment activities. Accordingly, the court concludes that Ms. Shavlik's First Amendment retaliation claim is insufficiently pleaded.

Ms. Shavlik's Fourteenth Amendment claim suffers similar defects. Ms. Shavlik appears to argue that she received defective notice of the show-cause hearing. (*See* Compl. at 13.) Specifically, she contends that Defendants failed to properly notify Ms. Shavlik of the show-cause hearing because, as a journalist, only a subpoena could legally compel her to appear before Judge Weiss. (Compl. at 13; *see also id.* at 15.) That argument is meritless. The show-cause order satisfied the notice due under the

Fourteenth Amendment and Washington law because it informed Ms. Shavlik "of the time and place of the hearing, and the nature of the charges pending." *In re Marriage of Maxfield*, 737 P.2d 671, 704 (Wash. 1987); *see also Cherry v. City Coll. of S.F.*, C04-04981 WHA, 2007 WL 2904188, at *3 (N.D. Cal. Oct. 1, 2007). Ms. Shavlik's procedural due process claim is thus legally insufficient.[6]

Finally, Ms. Shavlik's Sixth Amendment claim is not cognizable. Ms. Shavlik appears to contend that Defendants violated her Sixth Amendment right to counsel in holding a show-cause hearing at which she was not represented by counsel. (*Id.* at 13.) The record before the court suggests that Ms. Shavlik was not entitled to counsel during the show-cause hearing because the proceedings did not present the prospect of imprisonment. (OSC at 2 (stating that "[j]ail time is not being requested")); *United States v. Sun KungKang*, 468 F.2d 1368, 1369 (9th Cir. 1972) (holding that an indigent litigant is entitled to appointed counsel in a civil contempt proceeding when imprisonment is threatened); *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 26-27 (1981) ("[A]n indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty.").

In short, Ms. Shavlik's claims against the County and the Superior Court are insufficiently pleaded because she relies on a theory of *respondeat superior* liability and

---

[6] Ms. Shavlik makes an unintelligible statement regarding "equal protection of the law," but appears not to assert a claim under the Equal Protection Clause. (*See* Compl. at 17-18.) In addition, Ms. Shavlik summarily states that Defendants have violated the Fifth Amendment. (Compl. at 15.) To the extent she asserts a due process claim under the Fifth Amendment, the claim fails, as the Fifth Amendment Due Process Clause only applies to the federal government. *See, e.g.*, *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008).

fails to allege a cognizable constitutional violation.  For these reasons, the court

GRANTS Defendants' motion for judgment on the pleadings on Ms. Shavlik's federal

constitutional claims against the County and the Superior Court.  Mindful of the

solicitude due *pro se* litigants, the court GRANTS Ms. Shavlik leave to amend these

claims within 15 days of the date of this order.

      2. <u>Federal Constitutional Claims Against Judge Weiss</u>

      *a. Judicial Immunity*

Defendants argue that Ms. Shavlik's claims against Judge Weiss are barred by the

doctrine of judicial immunity.  (Mot. at 9-11.)  "Judicial immunity is a common law

doctrine developed to protect judicial independence."  *Moore v. Urquhart*, 899 F.3d

1094, 1103 (9th Cir. 2018) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).  The

doctrine provides judges absolute immunity from liability for damages for acts

committed within their judicial capacity, even if they are accused of acting maliciously or

corruptly.  *See, e.g.*, *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978).[7]

Ms. Shavlik appears not to assert a claim for damages against Judge Weiss.  (*See*

*generally* Compl.)  Rather, she appears to seek an injunction to vacate the show-cause

order, as well as a declaratory judgment that Judge Weiss violated her federal

---

[7] Ms. Shavlik opposes Defendants' motion on the ground that Washington law does not countenance common law immunities, and appears to argue that Washington law governs application of the doctrines of judicial immunity to both her state and federal claims.  (Resp. at 2-5.)  She is mistaken.  The court exercises federal question jurisdiction over Ms. Shavlik's federal law claims and supplemental jurisdiction over her state law claims.  *See* 28 U.S.C. §§ 1367(a), 1441.  Accordingly, the court applies federal law on immunities with respect to Ms. Shavlik's federal law claims.  In any event, Ms. Shavlik's argument that the Washington State Constitution "does no[t] allow for immunities" (*id.* at 1) is meritless.  *See, e.g.*, *Filan v. Martin*, 684 P.2d 769, 772-73 (Wash. Ct. App. 1984).

constitutional rights. (*Id.* at 1, 20-21.) Common law judicial immunity does not protect a state court judge against declaratory or injunctive relief. *See Moore*, 899 F.3d at 1104. Section 1983, however, grants judges immunity from injunctive relief for actions taken in their judicial capacity "unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see also Moore*, 899 F.3d at 1104 (noting that Section 1983 "provides judicial officers immunity from injunctive relief even when the common law would not").

The Ninth Circuit has identified four factors that weigh in favor of finding that a judge took a particular action in a judicial capacity: (1) "the precise act is a normal judicial function"; (2) "the events occurred in the judge's chambers"; (3) "the controversy centered around a case then pending before the judge; and (4) "the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (quoting *Meek v. Cty. of Riverside*, 183 F.3d 962, 967 (9th Cir. 1999)). Assessing these factors, the court finds Judge Weiss's alleged actions were paradigmatically judicial in nature.

Ms. Shavlik's claims against Judge Weiss appears to center on three actions Judge Weiss took in connection with Ms. Shavlik's efforts to film the Reed trial: (1) Judge Weiss's order limiting photography and videography to just one media outlet; (2) the show-cause order Judge Weiss issued after Ms. Shavlik violated the order on videography; and (3) his presiding over Ms. Shavlik's show-cause hearing, which she failed to attend. All three actions fall squarely within Judge Weiss's judicial capacity. First, show-cause orders and contempt hearings implicate "normal" judicial functions.

*See Duvall*, 260 F.3d at 1133. Second, the events at issue occurred in Judge Weiss's courtroom. *See id.* Third, Ms. Shavlik's claims against Judge Weiss arise directly from her efforts to record a criminal trial over which Judge Weiss was presiding. *See id.* Finally, the events "arose directly and immediately" out of Ms. Shavlik's violation of Judge Weiss's order restricting videography, which he issued in his official capacity. *See id.*

Even if a judge acts in a judicial capacity, he or she may not be entitled to judicial immunity for acts "taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 12 (1991). That is not the case here. Under Washington law, a court of general jurisdiction has inherent power "to enforce orders . . . and to punish for contempt for disobedience of its mandates." *Keller v. Keller*, 323 P.2d 231, 233-34 (Wash. 1958). That is precisely what Judge Weiss's show-cause order was intended to do. In issuing the show-cause order and holding the contempt hearing, Judge Weiss exercised the court's inherent power to enforce its order limiting videography during the trial. *See id.* The court thus rejects Ms. Shavlik's argument that Judge Weiss "acted in a manner that exceeded [the court's] jurisdiction." (Resp. at 2.)

Ms. Shavlik's claims do not fall within the narrow circumstances in which a court may award injunctive relief against a judicial officer under Section 1983. Ms. Shavlik does not allege that a declaratory decree was violated or that declaratory relief was unavailable. (*See generally* Compl.); 42 U.S.C. § 1983. In any event, "[d]eclaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order." *La Scalia v. Driscoll*, No. 10-CV-5007 (SLT)

(CLP), 2012 WL 1041456, at *7 (E.D.N.Y. Mar. 26, 2012) (quotation marks and citation omitted).  Judge Weiss is thus immune to Ms. Shavlik's claims for injunctive relief as related to her federal claims.

>    b.  *Declaratory Relief*

Although Section 1983 limits the availability of injunctive relief against judicial officers, it does not bar a court from granting declaratory relief in suits against state court judges for actions taken in their judicial capacities.  *See, e.g.*, *Buckwalter v. Nev. Bd. of Med. Exam'rs*, 678 F.3d 737, 747 (9th Cir. 2012); *Collin v. Zeff*, No. CV12-8156 PSG (AJW), 2013 WL 3273413, at *5 (C.D. Cal. Jun. 24, 2013) ("Absolute judicial immunity generally is not a bar to declaratory relief against a start court judge.").  Accordingly, the court must determine whether to exercise jurisdiction over Ms. Shavlik's claims for declaratory relief against Judge Weiss.

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  "This text has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'"  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).  When determining whether to entertain a declaratory judgment action, district courts should consider whether the action "furthers the Declaratory Judgement Act's purpose of 'enhancing judicial economy and cooperative federalism.'"  *R.R. St. & Co., Inc. v. Trans. Ins. Co., Inc.*, 656 F.3d 966, 975 (9th Cir. 2011) (quoting *Gov't Emp.*

*Ins. Co. v. Dizol*, 133 F.3d 1220, 1224 (9th Cir. 1998)). To that end, the court should "avoid needless determination of state law issues," "discourage litigants from filing declaratory actions as a means of forum shopping," and "avoid duplicative litigation." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005). In addition, a court may consider whether a claim for declaratory relief "will result in entanglement between the federal and state court systems." *Dizol*, 133 F.3d at 1225 n.5.

Considerations of comity and federalism weigh heavily against exercising jurisdiction over Ms. Shavlik's claims against Judge Weiss. In effect, Ms. Shavlik makes a *de facto* appeal of the show-cause order. Entertaining her claim would concern this court with the efforts of a co-equal state court to enforce its own orders. Other district courts, in similar circumstances, have declined to exercise jurisdiction over plaintiffs' claims for declaratory relief against state court judges. *See, e.g.*, *Hiramanek v. Clark*, No. C-13-0228 EMC, 2013 WL 12308479, at *2 (N.D. Cal. Mar. 25, 2013) (declining to exercise jurisdiction over the plaintiff's claim for declaratory relief against a state court judge because federal review of "actions taken in state court family law proceedings" would raise "serious federalism concerns"); *Muhammad v. Paruk*, 553 F. Supp. 2d 893, 900 (E.D. Mich. 2008) (declining to exercise jurisdiction over the plaintiff's claim for declaratory relief against a state court judge who barred the plaintiff from wearing a hijab during court proceedings because such review would "increase friction in the relationship

//

//

//

between our state and federal courts"). Accordingly, the court declines to exercise jurisdiction over Ms. Shavlik's claims for declaratory relief against Judge Weiss.[8]

In sum, the court GRANTS Defendants' motion for judgment on the pleadings on Ms. Shavlik's federal claims for injunctive relief against Judge Weiss as barred by Section 1983.[9] The court DECLINES to exercise jurisdiction over Ms. Shavlik's federal claims for declaratory relief against Judge Weiss. The court does not see how Ms. Shavlik could amend her federal claims against Judge Weiss to assert cognizable causes of action. Accordingly, the court DENIES Ms. Shavlik leave to amend her federal claims against Judge Weiss.

---

[8] The court does not express an opinion on whether the *Rooker-Feldman* doctrine bars Ms. Shavlik's claims against Judge Weiss. *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This jurisdictional bar applies to direct appeals of state court judgments, as well as their "*de facto* equivalent[s]." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012). No party states whether or not Judge Weiss entered an order of contempt after Ms. Shavlik's show-cause hearing (*see generally* Mot.; Resp.; Reply), and Defendants' motion does not argue that *Rooker-Feldman* applies to Ms. Shavlik's claims.

[9] Because the court exercises supplemental jurisdiction over Ms. Shavlik's state law claims, it must apply Washington law on judicial immunity with respect to those claims. *See Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000) (noting that "a federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction"); *see also Valley Bail Bonds v. Budeski*, No. CV-14-24-BLG-SPW-CSO, 2014 WL 3732632, at *8 (D. Mont. Sept. 5, 2014) (applying state law on judicial immunity with respect to state law claims over which the court had supplemental jurisdiction). Defendants argue that Ms. Shavlik's state law claims against Judge Weiss, like her federal claims, are barred by judicial immunity. (Mot. at 9-11.) That would be true if Ms. Shavlik only sought damages against Judge Weiss. But Ms. Shavlik appears to seek declaratory relief on the basis, in part, of Judge Weiss's alleged violation of RCW 5.68.010. (*See* Compl. at 19.) Defendants cite no authority for the proposition that Washington law affords judges immunity against suits for declaratory relief. (*See generally* Mot.) Accordingly, the court does not reach that issue. As discussed below, however, Ms. Shavlik's claim under RCW 5.68.010 fails as a matter of law. *See infra* § III.D.4.

### 3. Federal Constitutional Claims Against Mr. Sayles

Ms. Shavlik appears to allege that Mr. Sayles acted in concert with the County and the Superior Court to commit various constitutional violations, including violations of her rights under the First, Fourth, Sixth, and Fourteenth Amendments. (Compl. at 3.) Defendants argue that the court must dismiss these claims because they are insufficiently pleaded and because Mr. Sayles is not a state actor.[10] (Mot. at 12, 14.)

To state a claim under Section 1983, a plaintiff must allege that the constitutional violation she suffered was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Private actors, like Mr. Sayles, can be said to act under color of state law only if their conduct is fairly attributable to the state. *See West,* 487 U.S. at 49; *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351 (1974) (actions by a private party constitute state action if "there is a sufficiently close nexus between the State and the challenged action" that the actions of the private persons "may be fairly treated as that of the State itself."). The court concludes that Ms. Shavlik makes only conclusory allegations about Mr. Sayles' alleged collusion with state actors. *See Simmons v. Sacramento Cty. Super. Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) (conclusory allegations that a private lawyer conspired with

---

[10] Additionally, Defendants argue that Mr. Sayles is immune from suit under the doctrine of litigation immunity. (Mot. at 12-13.) It is not clear to the court that Ms. Shavlik's claims against Mr. Sayles arise out of his role as an "integral part[] of the judicial process." *Briscoe v. LaHue*, 460 U.S. 325, 335 (1938). Rather, Ms. Shavlik seems to allege that he conspired with Mr. Alsdorf and Mr. Matheson to initiate contempt proceedings against her, an act he would have taken outside of his role as counsel in the Reed trial. Moreover, common law litigation immunity does not extend to private attorneys accused of "conspiring with a judge to deprive someone of their constitutional rights," *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996), the very theory underlying Ms. Shavlik's claims.

government officials were insufficient to establish that the lawyer was a state action for purposes of Section 1983). Accordingly, the court GRANTS Defendants' to dismiss Ms. Shavlik's federal constitutional claims against Mr. Sayles. Mindful of the solicitude due *pro se* litigants, the court GRANTS Ms. Shavlik leave to amend these claims within 15 days of the date of this order.

### 4. First Amendment Claim Against Mr. Alsdorf and Mr. Matheson

The court's careful review of Ms. Shavlik's complaint shows that the only federal claim she brings against Mr. Alsdorf and Mr. Matheson is premised on their alleged violation of her First Amendment rights. (*See* Compl. at 15.) Defendants contend that Ms. Shavlik's claims against Mr. Alsdorf and Mr. Matheson are barred by the doctrines of prosecutorial and litigation immunity.[11] (Mot. at 12-13.) They also argue that all her claims against Mr. Alsdorf and Mr. Matheson are insufficiently pleaded. (*Id.* at 12.)

Prosecutors acting within the scope their authority are protected by absolute immunity from damages actions brought under Section 1983. *Imbler v. Patchman*, 424 U.S. 409, 430-31 (1976); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986). Prosecutors' scope of authority encompasses activities "intimately associated with the judicial phase of the criminal process," including "initiating a prosecution and . . . presenting the State's case." *Imbler*, 424 U.S. at 430-31. Prosecutorial immunity does not extend to actions for injunctive or declaratory relief. *Gobel v. Maricopa Cty.*, 867

---

[11] In the motion, Defendants argue that Mr. Alsdorf and Mr. Matheson are entitled to "litigation immunity." (Mot. at 12-14.) In their reply, Defendants refer to both "litigation immunity" and "prosecutorial immunity." (Reply at 1, 2.) Ms. Shavlik's response refers to "prosecutorial immunity." (Resp. at 4.)

F.2d 1201, 1203 n.6 (9th Cir. 1989) (citing *Supreme Court of Va. v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 736 (1980)).

The factual allegations underlying Ms. Shavlik's claims against Mr. Alsdorf and Mr. Matheson are simply too sparse for the court to assess whether they are entitled to prosecutorial or litigation immunity. Ms. Shavlik appears to suggest that Mr. Alsdorf and Mr. Matheson conspired with Judge Weiss and Mr. Sayles to violate her rights not in their role as prosecutors but rather as individuals intent on "stifl[ing] and punish[ing] First Amendment protected activity." (Compl. at 15.) Moreover, Ms. Shavlik does not specify the relief she seeks against Mr. Alsdorf and Mr. Matheson, impeding the court's ability to determine whether prosecutorial immunity bars her claims. In short, the paucity of factual allegations in Ms. Shavlik's complaint makes it impossible for the court to assess whether to extend prosecutorial or litigation immunity to Mr. Alsdorf and Mr. Matheson.

The court concludes, however, that Ms. Shavlik fails to plead a First Amendment retaliation claim against Mr. Alsdorf and Mr. Matheson. She alleges no facts that could plausibly connect the show-cause order with either prosecutor, establish retaliatory motive, or show that they acted in a manner that would deter a reasonable person from engaging in First Amendment activities. The court thus GRANTS Defendants' motion for judgment on the pleadings on Ms. Shavlik's First Amendment claim against Mr. Alsdorf and Mr. Matheson. Mindful of the solicitude due *pro se* litigants, the court GRANTS Ms. Shavlik leave to amend this claim within 15 days of the date of this order.

//

**D.      State Law Claims**

Defendants argue that Ms. Shavlik fails to allege sufficient facts or put forth a cognizable legal theory with respect to each of her state law claims.  (Mot. at 14-20.)

1.   Writs of Prohibition and Certiorari

Ms. Shavlik asks the court to issue "writs of prohibition and certiorari" to the Superior Court "to vacate and enjoin any [o]rder entered in violation of [her] rights."[12] (Compl. at 21.)  In general, federal district courts cannot issue writs to review or prohibit state court actions.  *See, e.g.*, *Johnson v. State of Washington*, No. C05-1283MJP, 2005 WL 3242143, at *1 (W.D. Wash. Nov. 30, 2005) ("[A] writ of prohibition may not be brought in a federal district court to prohibit actions by a state court."); *Londono-Rivera v. Virginia*, 155 F. Supp. 2d 551, 559 n.4 (E.D. Va. 2001) ("[A] federal district court cannot issue a writ to a state court.").  The court does not see how Ms. Shavlik could amend her request for writs of certiorari and prohibition to assert cognizable claims.  Accordingly, the court GRANTS Defendants' motion for judgment on the pleadings on Ms. Shavlik's claims for writs of certiorari and prohibition without leave to amend.

2.   Article I, Section 7 of the Washington State Constitution

Ms. Shavlik alleges that various Defendants violated her right to privacy under Article I, Section 7 of the Washington Constitution, which provides that "[n]o person

---

[12] Under Washington law, a writ of prohibition "arrests the proceedings of any tribunal, . . . when such proceedings are without or in excess of the jurisdiction of such tribunal . . . ." RCW 7.16.290.  A statutory writ of certiorari permits a court to review the proceedings of "an inferior tribunal" when that tribunal has acted in excess of its jurisdiction and "there is no appeal, nor . . . any plain, speedy and adequate remedy at law."  RCW 7.16.040; *see also Kerr-Belmark Const. Co. v. City Council of City of Marysville*, 674 P.2d 684, 386 (Wash. Ct. App. 1984).

shall be disturbed in his private affairs, or his home invaded, without authority of law."
Wash. Const., art. 1, § 7; (*see also* Compl. at 19.) The Washington Supreme Court has
declined to recognize a private right of action under that provision of the Washington
Constitution, however. *Reid v. Pierce Cty.*, 961 P.2d 333, 342-43 (Wash. 1998)
(declining to recognize a civil action for damages premised on a violation of the state
constitutional right to privacy); *see also Keyes v. Blessing*, No. 25982-0-III, 2008 WL
2546439, at *1 n.1 (Wash. Ct. App. June 26, 2008) ("[T]here is no private right of action
under [Article I, Section 7] of the state constitution."). Accordingly, the court GRANTS
Defendants' motion for judgment on the pleadings on Ms. Shavlik's claim under Article
I, Section 7 of the Washington Constitution. The court acknowledges that, under
Washington law, individuals possess a cause of action to protect the common law right of
privacy. *See Reid*, 961 P.2d at 339. The court thus DENIES Ms. Shavlik leave to amend
her privacy claim under the Washington Constitution but GRANTS her leave to amend
her complaint to sufficiently assert a common law violation of privacy claim.

      3.  <u>Washington State Court General Rule 16</u>

      Ms. Shavlik alleges that various Defendants violated her rights under General Rule
16, which allows a judge to exercise "reasonable discretion in prescribing conditions and
limitations with which media personnel shall comply" in the courtroom. Wash. Ct.
Rules, GR 16. Ms. Shavlik cites no authority to show that General Rule 16 provides a
cause of action to a plaintiff who was not a party before the judge in the matter in which
General Rule 16 was applied, and the court declines to create one. *See King v.
Rumbaugh*, No. C17-0031RSM, 2017 WL 1283501, at *8 (W.D. Wash. April 6, 2017)

("It is . . . not clear to the Court how a judge's violation of GR 16 creates a cause of action for [p]laintiffs who were not parties in the matter before the judge . . . .").

Even assuming General Rule 16 provides Ms. Shavlik a cause of action, Ms. Shavlik alleges no facts to support a cognizable claim under the Rule. Ms. Shavlik asserts that General Rule 16 grants "preferable treatment . . . to local news reporters" like her, and that it requires judges to adopt a "first in time, first in line" approach to media privileges. (Compl. at 10.) General Rule 16 contains no such requirements. Rather, it expressly allows judges to prescribe, in their discretion, "conditions and limitations with which media personnel shall comply." *See* Wash. Ct. Rules, GR 16(b). Judge Weiss ordered Ms. Shavlik to refrain from recording the Reed trial because "she could not provide a feed to other media personnel." (OSC at 1.) His decision was eminently reasonable and well within the discretion afforded by General Rule 16. The court does not see how Ms. Shavlik could assert a cognizable claim under General 16 if granted to leave to amend. The court thus GRANTS Defendants' motion for judgment on the pleadings on Ms. Shavlik's claim under General Rule 16. The court DENIES Ms. Shavlik leave to amend this claim.

### 4. RCW 5.68.010

Ms. Shavlik alleges that various Defendants violated her rights under RCW 5.68.010, which prohibits a court from "compel[ling] the news media to testify, produce, or otherwise disclose" the identity of a confidential source or work product prepared in the course of reporting. RCW 5.68.010(1); *see also Republic of Kazakhstan v. Does*

//

*1-100*, 368 P.3d 524, 528 (Wash. Ct. App. 2016) (noting that RCW 5.68.010 codifies "the qualified common law privilege for journalists").

Ms. Shavlik fundamentally misunderstands the nature of the privilege afforded by RCW 5.68.010. She seems to suggest that the statute operates to immunize her from any court order relating to her journalistic endeavors. Yet RCW 5.69.010 only shields the disclosure of confidential sources and work product, neither of which were implicated in the show-cause order or hearing. Indeed, the show-cause order was wholly unconcerned with the substance of Ms. Shavlik's reporting on the Reed trial. Rather, it informed Ms. Shavlik that Judge Weiss had good cause to believe that she had flouted his order on videography, and provided Ms. Shavlik an opportunity to demonstrate why she should not be held in contempt. In any event, the court is not persuaded that RCW 5.69.010 provides a private cause of action, as opposed to a testimonial privilege. Ms. Shavlik furnishes no authority to that effect. The court does not see how Ms. Shavlik could assert a cognizable claim RCW 5.68.010 if granted leave to amend. Consequently, the court GRANTS Defendants' motion on the pleadings on Ms. Shavlik's claim under RCW 5.68.010. The court DENIES Ms. Shavlik leave to amend this claim.

5. <u>Barratry</u>

Ms. Shavlik brings a claim for barratry against Mr. Sayles, Mr. Alsdorf, and Mr. Matheson. Pursuant to RCW 9.12.010, any person who "brings on her own behalf, or instigates, incites or encourages another to bring any false suit" in state court, "with intent thereby to distress or harass a defendant in the suit," is guilty of the misdemeanor of barratry. RCW 9.12.010. Ms. Shavlik appears to allege that Defendants committed

barratry because they instigated contempt proceedings against her. (*See* Compl. at 15.) Defendants argue that RCW 9.12.010 does not provide a private right of action and that, even if it did, Ms. Shavlik's barratry claim is insufficiently pleaded. (Mot. at 17.)

Previously, this court that found that no existing authority suggests that RCW 9.12.010 offers civil litigants a private cause of action. *Wells Fargo Bank, N.A. v. Genung*, No. C13-0703JLR, 2013 WL 6061592, at *7 (W.D. Wash. Nov. 18, 2013) ("[T]his court has not found any authority indicating that RCW 9.12.010 establishes a private cause of action."). Ms. Shavlik cites no authority to the contrary and gives the court no reason to revisit that conclusion. (*See generally* Resp.) Even if the barratry statute did authorize suits by private citizens, Ms. Shavlik fails to allege facts that suggest that Mr. Sayles brought, or encouraged another person to bring, a false suit against Ms. Shavlik. (*See generally* Compl.) To the extent that Ms. Shavlik premises her barratry claim on Judge Weiss's show-cause order, she cannot allege that she was the target of a false suit: Ms. Shavlik herself concedes that she filmed the Reed trial after Judge Weiss ordered her to refrain from doing so. (*Id.* at 11-12.) In light of these factors, the court does not see how Ms. Shavlik could state a cognizable claim for barratry. Accordingly, the court GRANTS Defendants' motion for judgment on the pleadings on Ms. Shavlik's barratry claim. The court DENIES Ms. Shavlik leave to amend this claim.

6. Abuse of Process

Ms. Shavlik brings a claim for abuse of process against Mr. Sayles. (Compl. at 19.) A person commits the tort of abuse of process when he or she "uses a legal process . . . against another primarily to accomplish a purpose for which it is not

designed." *Bellevue Farm Owners Ass'n v. Stevens*, 394 P.3d 1018, 1024 (Wash. Ct. App. 2017) (quoting Restatement (2d) of Torts § 682)). "[T]he mere institution of a legal proceeding[,] even with a malicious motive[,] does not constitute an abuse of process." *Maytown Sand and Gravel, LLC v. Thurston Cty.*, 423 P.3d 223, 247 (Wash. 2018) (quoting *Sea-Pac Co. v. United Food & Commercial Workers Local Union 44*, 699 P.2d 217, 220-21 (Wash. 1985)) (internal quotation marks omitted)). Rather, "the gist of the action is the misuse or misapplication of the process, after it has once been issued, for an end other than that which it was designed to accomplish." *Loeffelhozl v. Citizens for Leaders with Ethics and Accountability*, 82 P.3d 1199, 1217 (Wash. Ct. App. 2004) (quoting *Batten v. Abrams*, 626 P.2d 984, 989 (Wash. Ct. App. 1981)) (internal quotation marks and emphasis omitted).

Ms. Shavlik fails to sufficiently state a claim for abuse of process. She appears to suggest that Mr. Sayles used the contempt proceedings to "retaliate[]" against her for filming his interactions with a witness during the Reed trial. (Compl. at 19.) She alleges no facts capable of supporting that conclusory allegation; nor does she allege facts capable of showing that Mr. Sayles somehow exerted influence over the contempt proceedings. (*See generally id.*) Accordingly, the court GRANTS Defendants' motion for judgment on the pleadings on Ms. Shavlik's abuse of process claim. Mindful of the solicitude due *pro se* litigants, the court GRANTS Ms. Shavlik leave to amend this claim within 15 days of the date of this order.

//

//

7. <u>Intentional Infliction of Emotional Distress</u>

Ms. Shavlik brings a claim against Mr. Sayles for intentional infliction of emotional distress. (Compl. at 23.) To establish a claim of intentional infliction of emotional distress, a plaintiff must show: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress. *See, e.g.*, *Reid v. Pierce Cty.*, 961 P.2d 333, 337 (Wash. 1998); *Christian v. Tohmeh*, 366 P.3d 16, 30 (Wash. Ct. App. 2015). "Liability [for intentional infliction of emotional distress] exists only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Reid*, 961 P.2d at 337 (internal quotation marks, citation, and emphasis omitted).

Ms. Shavlik fails to allege facts sufficient to support any of the elements of intentional infliction of emotional distress. Ms. Shavlik asserts that Mr. Sayles gave her the "evil eye" after he saw her filming his interactions with a witness during the Reed trial. (Compl. at 12.) She also contends that Mr. Sayles made her "[f]eel[] threatened." (*Id.*) Without more, these allegations are insufficient to support an actionable claim for intentional infliction of emotional distress. Ms. Shavlik also suggests that Mr. Sayles encouraged the court to initiate contempt proceedings against her for the sole purpose of causing her emotional distress. (*Id.* at 15.) That contention is wholly unsupported by the show-cause order and the factual allegations put forth in Ms. Shavlik's pleadings. (*See generally id.*) Accordingly, the court GRANTS Defendants' motion to dismiss Ms. Shavlik's claim for intentional infliction of emotional distress. Mindful of the solicitude

due *pro se* litigants, the court GRANTS Ms. Shavlik leave to amend this claim within 15 days of the date of this order.

### 8. Consumer Protection Act

Ms. Shavlik seeks to bring a claim against Mr. Sayles for "deceptive trade violations" and "unfair competition." (Compl. at 18.) Ms. Shavlik does not tether this claim to a statutory cause of action. (*See generally* Compl.) Liberally construing Ms. Shavlik's complaint, the court infers that she brings a claim for unfair competition under Washington's Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq.*

The CPA outlaws "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To state a claim under the CPA, a plaintiff must allege five elements: (1) "an unfair or deceptive act or practice," (2) occurring "in trade or commerce," (3) "a public interest," (4) "injury to the plaintiff in his or her business or property," and (5) "a causal link between the unfair or deceptive act and the injury suffered." *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 17 (Wash. 2007) (citing *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986)). An unfair or deceptive act is an act that deceives or "[has] the capacity to deceive a substantial portion of the public." *Indoor Billboard*, 170 P.3d at 18.

Ms. Shavlik fails to state a cognizable claim under the CPA. She makes the puzzling assertion that Mr. Shavlik "published omitted facts amount[ing] to deceptive act or practices." (Compl. at 18.) She also contends that his actions "plac[ed] . . . her business in [a] bad light." (*Id.*) But she fails to allege what exactly Mr. Sayles

published, how that act was deceptive under Washington law, how it harmed her

business, and how it implicated the public interest.  Her summary contention that Mr.

Sayles engaged in "deceptive trade violations" is precisely the sort of "unadorned,

'the-defendant-unlawfully-harmed-me accusation'" that fails to satisfy the federal

pleading standards.  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see*

*also* Fed. R. Civ. P. 8(a).  Accordingly, the court GRANTS Defendants' motion to

dismiss Ms. Shavlik's unfair competition claim.  Mindful of the solicitude due *pro se*

litigants, the court GRANTS Ms. Shavlik leave to amend this claim within 15 days of the

date of this order.

### E.    Supplemental Jurisdiction Over PRA Claim

The County moves to remand Ms. Shavlik's PRA claim to state court on the

ground that the court lacks supplemental jurisdiction over that claim.  (Mot. at 20-21.)

Under 28 U.S.C. § 1367(a), a court has supplemental jurisdiction over state law claims

that are "so related" to the claims over which the court has original jurisdiction that "they

form part of the same case or controversy under Article III of the United States

Constitution."  28 U.S.C. § 1367(a).  Claims are part of the same case or controversy if

they "share[] a 'common nucleus of operative fact'" and would normally be tried

together.  *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (quoting *Trs. of the*

*Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape Maint., Inc.*,

333 F.3d 923, 925 (9th Cir. 2003)); *see also United Mine Workers of Am. v. Gibbs*, 383

U.S. 715, 725 (1966).  In the context of a removed action, a court must "sever" all claims

not within the original or supplemental jurisdiction of the district court and "remand the

severed claims to the State court from which the action was removed." 28 U.S.C. § 1441(c)(2).

Ms. Shavlik's PRA claim does not share a common nucleus of operative fact with the other claims asserted in her complaint. Her PRA claim derives from public record requests she filed three years before the Reed trial (*see* Compl. at 4-8), the event from which her remaining claims arise. It is thus not part of the same case or controversy under Article III, and falls outside of this court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). The court must sever and remand Ms. Shavlik's PRA claim. *See* 28 U.S.C. §1441(c)(2). The court thus GRANTS the County's motion to remand Ms. Shavlik's PRA claim to the Superior Court of Skagit County.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss all of Ms. Shavlik's claims except for her PRA claim (Dkt. # 12). The court GRANTS Ms. Shavlik leave to amend, within 15 days of the date of this order, her federal constitutional claims against the County, the Superior Court, and Mr. Sayles; her First Amendment claim against Mr. Alsdorf and Mr. Matheson; and her claims for abuse of process, intentional infliction of emotional distress, violation of the common law right to privacy, and unfair competition under the CPA. All other claims are dismissed without leave to amend. If Ms. Shavlik fails to timely comply with this order or fails to file an amended complaint that remedies the aforementioned deficiencies, the court will dismiss her complaint without leave to amend.

//

1      The court further GRANTS the County's motion to remand.  The court ORDERS

2 that:

3     1.  Pursuant to 28 U.S.C. § 1441(c)(2), all further proceedings regarding Ms.

4        Shavlik's PRA claim are REMANDED to the Superior Court of Skagit

5        County, Washington;

6     2.  The Clerk shall mail a certified copy of the order of remand to the Clerk for the

7        Superior Court of Skagit County, Washington; and

8     3.  The Clerk shall also transmit the record herein to the Clerk for the Superior

9        Court of Skagit County, Washington.

10      Finally, the court DIRECTS the clerk to strike from the court's calendar

11 Defendants' pending motions for protective orders (Dkt. ## 17, 18).

12      Dated this 21st day of December, 2018.

13

14

15 The Honorable James L. Robart
   U.S. District Court Judge

16

17

18

19

20

21

22