UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LORI D. SHAVLIK,<br><br>                    Plaintiff,<br><br>          v.<br><br>SNOHOMISH COUNTY<br>SUPERIOR COURT, et al.,<br><br>                    Defendants. | CASE NO. C18-1094JLR<br><br>ORDER GRANTING<br>DEFENDANTS' MOTION TO<br>DISMISS |

## I.    INTRODUCTION

On December 21, 2018, the court granted Defendants' motion to dismiss all of Plaintiff Lori D. Shavlik's claims, except for her claim under Washington State's Public Records Act ("PRA"), RCW ch. 42.56.  (12/21/18 Order (Dkt. # 21); *see also* Compl. (Dkt. # 6-1).)  The court remanded Ms. Shavlik's PRA claim to state court.  (*Id.* at 34-35.)  The court further granted Ms. Shavlik leave to amend certain of her claims

//

within 15 days of the date of that order.  (*Id.* at 34.)  On January 8, 2019, Ms. Shavlik filed an amended complaint.  (FAC (Dkt. # 24).)

Before the court is Defendants Snohomish County, Deputy Prosecuting Attorney ("DPA") Andrew E. Alsdorf, Detective David Fontenot, DPA Craig S. Matheson,[1] Mark Roe, Philip G. Sayles and the Sayles Law Firm, PLLC's ("the Sayles Law Firm") (collectively, "Defendants") Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Ms. Shavlik's amended complaint.  (2d MTD (Dkt. # 27).)  The court has considered the motion, the parties' submissions in support of and in opposition to the motion,[2] relevant portions of the record, and the applicable law.  Being fully advised,[3] the court GRANTS Defendants' motion and DISMISSES Ms. Shavlik's amended complaint with prejudice and without leave to amend.

## II.     BACKGROUND

The court's dismissal order sets forth the factual background allegedly underpinning Ms. Shavlik's claims and provides a detailed summary of Ms. Shavlik's attendance at the criminal trial of John Reed ("the Reed trial") in May 2018, and the

//

---

[1] Ms. Shavlik misspells Mr. Matheson's name as "Matteson" in both her complaint and amended complaint.  (*See* MTD at 3; Compl. ¶ 2.3; FAC ¶ 2.4.)

[2] Ms. Shavlik filed a "surreply" to Defendants' motion.  (*See* Surreply (Dkt. # 36).)  Ms. Shavlik did not file her surreply in compliance with Local Rule LCR 7(g).  *See* Local Rules W.D. Wash. LCR 7(g).  Nevertheless, given Ms. Shavlik's *pro se* status, the court reviewed and considered Ms. Shavlik's surreply.  Nothing in Ms. Shavlik's surreply altered the court's analysis of Ms. Shavlik's claims or Defendants' motion to dismiss her amended complaint.

[3] No party has requested oral argument (*see* 2d MTD at 1; Resp. (Dkt. # 29) at 1), and the court does not consider oral argument helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

show-cause order Judge Bruce Weiss issued to determine if Ms. Shavlik violated his order on filming during the Reed trial.[4]  (12/21/18 Order at 2-7.)  The court will not repeat that background here but describes only the differences between Ms. Shavlik's original and amended complaints that are pertinent to Defendants' motion to dismiss and this order.

In her original complaint, Ms. Shavlik sued Snohomish County Superior Court, Snohomish County, Judge Weiss, DPA Alsdorf, DPA Matheson, Mr. Sayles, and the Sayles Law Firm.  (Compl. ¶¶ 2.2-2.4, 2.6.)  In her amended complaint, she dropped Snohomish County Superior Court and Judge Weiss as defendants.   (*See generally* FAC.)  However, she added Mr. Roe, who was formerly the Prosecuting Attorney for Snohomish County, and Detective Fontenot of the Snohomish County Sheriff's Office. (FAC ¶¶ 1.3-1.4, 2.4-2.5.)

The court dismissed the following claims without leave to amend:  (1) claims for injunctive and declaratory relief against Judge Weiss (12/21/18 Order at 16-21); (2) a claim for state law writs of prohibition and certiorari (*id.* at 25); (3) a state law claim under Article I, Section 7 of the Washington State Constitution (*id.* at 25-26); (4) a state law claim under Washington State Court General Rule 16 (*id.* at 26-27); (5) a state law claim under RCW 5.68.010 (*id.* at 27-28); and (6) a state law claim for barratry (*id.* at 28-29).

//

---

[4] The court took judicial notice of Judge Weiss's show-cause order in its prior dismissal order.  (12/21/18 Order at 7-8.)

The court granted Ms. Shavlik leave to amend the following claims:  (1) federal constitutional claims against Snohomish County and Mr. Sayles; (2) First Amendment claim against Mr. Alsdorf and Mr. Matheson; (3) abuse of process claims against Mr. Sayles and the Sayles Law Firm; (4) a claim for intentional infliction of emotional distress against Mr. Sayles; (5) a claim for violation of the common law right to privacy against Mr. Sayles; and (6) a claim for unfair competition under Washington State's Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq.*, against Mr. Sayles.  (*See* 12/21/18 Order at 32.)

In her amended complaint, Ms. Shavlik expressly delineates four causes of action.  (FAC at 15-16.)  In her first cause of action under 42 U.S.C. § 1983, which she brings against all Defendants, she alleges that Defendants denied "her civil rights including but not limited to her right to free speech under the first amendment and denial of due process under the [Fourteenth Amendment]."  (FAC at 15.)  Ms. Shavlik brings her remaining three state law causes of action against all Defendants "except the prosecutors," presumably referring to DPA Alsdorf and DPA Matheson.  (*Id.* at 15-16.)  As she describes them, her state law claims include:  (1) abuse of process, (2) intentional infliction of emotional distress, (3) deceptive trade violations, and (4) common law right to privacy.  (*Id.*)

The court now considers Defendants' motion to dismiss Ms. Shavlik's amended complaint.

//

//

# III.   ANALYSIS

## A.   Standard

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of this rule is to "'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "A motion under [Rule] 12(b)(6) tests the formal sufficiency of the statement of claim for relief."  *Palms v. Austin*, C18-0838JLR, 2018 WL 4258171, at *4 (W.D. Wash. Sept. 6, 2018) (quoting *Fednav Ltd. v. Sterling Int'l*, 572 F. Supp. 1268, 1270 (N.D. Cal. 1983)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  This standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  When considering a Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005), and must accept all well-pleaded allegations of material fact as true, *see Wyler Summit P'ship v. Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, the court need not accept as true a legal

conclusion presented as a factual allegation. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 550).

Because Ms. Shavlik is *pro se*, the court must construe her complaint liberally when evaluating it under the *Iqbal* standard. *See Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1011 (9th Cir. 2011). Although the court holds the pleadings of *pro se* plaintiffs to "less stringent standards than those of licensed attorneys," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong," *Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995). Accordingly, the court should "not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997).

**B.     Claims the Court Earlier Dismissed Without Leave to Amend**

Defendants correctly point out that even if Ms. Shavlik does not expressly allege any of the claims that the court previously dismissed without leave to amend, she alludes to some of these dismissed claims in scattered portions of her amended complaint. (MTD at 6-7; *see, e.g.*, FAC at 13:16-14:1 (alleging barratry); *id.* at 13:16-18 (alleging a violation of RCW 5.68.010); *id.* at 15:6-9 (alleging that she is entitled to injunctive relief from "an unconstitutionally vague and overbroad Order in Snohomish Court Superior Court"); *see also* 12/21/18 Order at 29 (dismissing the barratry claim without leave to amend); *id.* at 28 (dismissing the claim under RCW 5.68.010 without leave to amend); *id.* at 21 (dismissing the claim against Judge Weiss of the Snohomish County Superior Court without leave to amend); *id.* at 25 (dismissing the claims for writs of prohibition and

certiorari to issue against the Snohomish County Superior Court without leave to amend).)  Defendants ask the court to "reaffirm its dismissal of these claims" to the extent her amended complaint represents an attempt to reassert them.  (MTD at 6-7.)  In her response, Ms. Shavlik acknowledges that she does not intend to reassert these claims in her amended complaint.  (Resp. at 3.)  To the extent that her amended complaint could be liberally construed to do so, the court reaffirms its dismissal of these claims without leave to amend.

**C.  Claims Against New Defendants**

Ms. Shavlik raises claims against two new Defendants in her amended complaint: (1) Mr. Roe, who was formerly the Prosecuting Attorney for Snohomish County, and (2) Detective Fontenot, who Ms. Shavlik alleges is a police detective working for Snohomish County.  (*See* FAC ¶¶ 2.4-2.5.)  For the reasons stated below, the court dismisses Ms. Shavlik's claims against these new Defendants.

1.  <u>The Addition of New Defendants is Untimely</u>

In her amended complaint, Ms. Shavlik brings claims against two new defendants: Mr. Roe and Detective Fontenot.  (*See* FAC ¶¶ 1.3-1.4, 2.4-2.5.)  Ms. Shavlik filed her amended complaint on January 8, 2019.  (*See generally id.*)  However, the deadline for adding new parties expired on November 13, 2018.  (Sched. Order (Dkt. # 14) at 1.)

Because Ms. Shavlik did not seek to add Mr. Roe and Detective Fontenot until after the deadline for adding new parties had expired, whether she is allowed to do so is governed by Federal Rule of Civil Procedure 16(b)(4), not Rule 15(a).  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).  "Unlike Rule 15(a)'s

liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. . . . [I]f that party was not diligent, the inquiry should end.'" *In re W. States Wholesale Nat. Gas Antitrust Litig*., 715 F.3d 716, 737 (9th Cir. 2013) (quoting *Johnson,* 975 F.2d at 609).

Here, Ms. Shavlik makes no showing at all concerning her diligence in uncovering her claims against the newly added Mr. Roe and Detective Fontenot or why she could not add Defendants at the time she filed her original complaint or at least prior to the deadline for adding new parties. (*See generally* Resp.) Accordingly, the court dismisses Ms. Shavlik's claims against these new defendants without leave to amend.

    2.    <u>Ms. Shavlik's Claims against Detective Fontenot are Barred by *Res Judicata* or Too Conclusory and Implausible to State a Claim</u>

Even if Ms. Shavlik's addition of Detective Fontenot as a defendant had been timely, the court would still dismiss her claims against him. In her amended complaint, Ms. Shavlik adds new allegations concerning her 2015 prosecution for arson in Snohomish County Superior Court—specifically alleging that Detective Fontenot mishandled evidence. (*See* FAC at 4:14-9:25.) To the extent that Ms. Shavlik is asserting any claim arising out of her prior 2015 arson prosecution, those claims are barred by *res judicata*. Ms. Shavlik litigated her claims against Snohomish County and others for alleged civil rights violations in this court in 2017. *See Shavlik v. City of Snohomish, et al.,* No. C17-0144JCC (W.D. Wash.) ("*Shavlik I*"). The allegations she asserts in her amended complaint are substantially the same as those she alleged in her

prior 2017 lawsuit concerning her 2015 prosecution for arson. (*Compare* FAC ¶¶ 3.7-3.25 *with Shavlik I*, Compl. (Dkt. # 1-2) ¶¶ 3.1-3.25.) In her prior lawsuit, Judge John C. Cougenhour granted the defendants' summary judgment motion and entered final judgment in favor of the defendants on all of Ms. Shavlik's claims. *See Shavlik I*, SJ Order (Dkt. # 81), Judgment (Dkt. # 82).[5]

Res judicata provides that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). *Res judicata* bars both claims the party raised and claims the party could have raised in the prior action. *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). Judge Coughenour specifically addressed Ms. Shavlik's allegations against Detective Fontenot. *See Shavlik I*, Dkt. # 81 at 6 ("Plaintiffs allege: Detective Fontenot lost 28 exculpatory photos . . . . [and] Detective Fontenot fabricated evidence . . . ."). Further, Snohomish County was a defendant in Ms. Shavlik's prior suit before Judge Coughenour, and Detective Fontenot is in privity with the defendants in that case. "There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the [government] is *res judicata* in relitigation of the same issue between that party and another officer of the government." *Fund for Animals, Inc.*

//

---

[5] The court takes judicial notice of prior proceedings in the Western District of Washington. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.1992) (stating that a court may take judicial notice "of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

*v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992) (citation omitted); *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir. 1972) ("[R]es judicata may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants.").  The court concludes that *res judicata* bars any claim Ms. Shavlik asserts against Detective Fontenot arising from her prior 2015 arson prosecution.

Nevertheless, Ms. Shavlik argues that the allegations in her amended complaint concerning Detective Fontenot are merely to "establish a motive and pattern of conduct that supports her claims in this suit."  (Resp. at 5.)  In her amended complaint, Ms. Shavlik asserts new allegations related to an entity called "Dawson Place," which she describes as holding "itself out as a 'counseling service' for victims of sexual crime." (FAC ¶ 3.4.)  She describes her dissatisfaction with this entity and the services it provided to her daughter.  (*Id.* ¶ 3.5.)  She describes conducting her own investigation into Dawson Place and asserts that, through their alleged involvement in Dawson Place, Defendants "committed federal criminal wire fraud."  (*Id.* ¶ 3.6; *see also id.* ¶¶ 3.26-3.32.)  She posits that, "[f]rom her activism at "Dawson Place, it could be plausibly argued that . . . [Detective] Fontenot . . . retaliated by attempting to frame [her] on an arson charge for exposing their illicit and unlawful undercover scheme at Dawson Place."  (*Id.*)  Thus, based on her own description, her First Amendment "retaliation" claim against Detective Fontenot is bound up with the claims and factual allegations in her prior federal suit.  *See generally Shavlik I*, Compl. (Dkt. # 1-2).  She provides no explanation for failing to bring the retaliation claim against Detective Fontenot in her

prior suit. (*See generally* Resp.) Indeed, she could have brought this claim in that suit, but did not. As noted above, *res judicata* bars both the claims Ms. Shavlik brought in her earlier lawsuit as well as those she could have brought. *W. Radio Servs. Co.*, 123 F.3d at 1192. The court, therefore, concludes that all of Ms. Shavlik's claims against Detective Fontenot are barred by *res judicata*.

In any event, Ms. Shavlik's allegations concerning Dawson Place and Detective Fontenot are conclusory and implausible. She appears to allege that Dawson Place is a RICO enterprise where unidentified "defendants" masquerade as social workers. (*See* FAC ¶¶ 3.6, 3.30-3.32.) She asserts no factual allegations concerning who is masquerading or what facts support these allegations. (*See generally id.*) She alleges no connection at all between Detective Fontenot and Dawson Place. (*Id.*) Regarding the Reed trial, which formed the basis for her original claims, she simply added Detective Fontenot to a list of Defendants she previously accused of coaching a witness. (*Compare* Compl. at 12:8-12, *with* FAC ¶ 3.37.) Thus, the totality of her allegations against Detective Fontenot concerning the Reed trial are as follows:

> [Ms.] Shavlik . . . noticed that . . . [Detective] Fontenot [was] coaching a Washington State's [sic] witness: Snohomish County Coroner David Smith. [Ms.] Shavlik witnessed . . . [Detective] Fontenot . . . tampering with this witness who was in the midst of testifying when the coaching took place in [the Reed trial].

(FAC ¶ 3.37.) She does not connect this allegation with any other alleged misconduct in her amended complaint; nor does she connect this allegation to any of her causes of action. The court concludes that these allegations—on their own or in combination with

her allegations concerning Dawson Place—are insufficient to state a claim against Detective Fontenot.

Based on the foregoing, the court concludes that even if Ms. Shavlik had timely added Detective Fontenot as a defendant, her claims are either barred by the doctrine of *res judicata* or too conclusory and implausible to state a claim against him. Accordingly, the court dismisses Ms. Shavlik's claims against him.

3. <u>Ms. Shavlik's Claims against Mr. Roe Are Too Conclusory and Implausible to State a Claim</u>

Like her claims against Detective Fontenot, even if Ms. Shavlik's addition of Mr. Roe as a defendant had been timely, the court would still dismiss her claims against him. Ms. Shavlik's allegations concerning Mr. Roe are sparse. She alleges that he worked as a prosecutor in Snohomish County. (*Id.* ¶ 2.4.) She further alleges that Mr. Roe was in the courtroom when Judge Weiss, who presided over the Reed trial, conducted a May 17, 2018, hearing concerning the videotaping of the trial. (*Id.* ¶¶ 3.33-3.34.) She also contends that Mr. Roe "spent 30% of his time inside of Dawson Place and is the [P]resident of Dawson Place." (*Id.* ¶ 3.31; *see also id.* ¶ 3.6 ("Public disclosure request disclosed that . . . [Mr.] Roe spent over 30% of his work time, working for Dawson Place and worked in executive positions.").) Finally, she asserts that, while she was conducting her "investigation" into Dawson Place, Mr. Roe retired as a prosecutor. (*Id.*) However, she provides no factual basis for her conclusion that Mr. Roe spent "30% of his time" at Dawson Place, and does not connect either that allegation or her other allegations

concerning Mr. Roe's connection to the Reed trial or Dawson Place to any of her causes of action. (*See id.*)

Based on these allegations, the court concludes that Ms. Shavlik fails to plead "factual content" that allows the court to draw a reasonable inference that Mr. Roe is liable to her for any misconduct. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Even under the more relaxed standard applicable to a *pro se* litigant, Ms. Shavlik fails to meet the minimum threshold of providing Mr. Roe with notice of what it is that he allegedly did wrong. *See Brazil*, 66 F.3d at 199. Accordingly, the court dismisses Ms. Shavlik's claims against him.

**D.    Federal Claims Against Snohomish County**

In dismissing Ms. Shavlik's federal claims against Snohomish County, the court informed Ms. Shavlik that she could not rely upon a *respondeat superior* theory, but rather was required to plead facts establishing the County's liability as required by *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691, 694 (1978). (*See* 12/21/18 Order at 12-13.) Specifically, the court stated that Ms. Shavlik "pleads no facts that would suggest that the County . . . had a custom or policy amounting to deliberate indifference of the rights she claims were violated." (*Id.* at 13.) Her amended complaint fares no better in this regard. (*See generally* FAC.) She has still failed to allege a *Monell* claim against Snohomish County. (*See id.*) She argues that her inclusion of Mr. Roe, "who is the elected prosecutor of Snohomish County . . . and has

the power to establish custom and policy with respect to the retaliation directed at [her] . . . establishes Monell [sic] liability . . . ." (Resp. at 7.) Even assuming Mr. Roe has such authority, merely adding him to her amended complaint as described above, *see supra* § III.C.3., is insufficient to plead the existence of "policy or custom" as required under *Monell*, 436 U.S. at 694. Accordingly, the court dismisses Ms. Shavlik's claims against the County.

**E.      First Amendment Claim**

Ms. Shavlik's First Amendment claim, which she asserts against all Defendants, rests upon substantially the same allegations set forth in her original complaint. (*Compare* Compl. at 11-14, *with* FAC ¶¶ 3.36-3.44.) As the court indicated in its prior order, Ms. Shavlik appears to allege that Defendants acted in concert to retaliate against her for filming the Reed trial, which she frames as an exercise of her First Amendment rights as a news or investigative reporter or a blogger. (*See* 12/21/18 Order at 13-14; *see also* FAC at 8 (describing Ms. Shavlik as "an investigative reporter/blogger"), 14 (describing Ms. Shavlik as "a news reporter").) For her First Amendment retaliation claim, Ms. Shavlik must plead plausible factual allegations showing that: (1) a defendant took some form of state action that would deter a reasonable person from engaging in First Amendment activities, and (2) the "desire to cause the chilling effect was a but-for cause of the defendant's action." *Skoog v. Cty. of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006).

In its prior order, the court concluded that, even liberally construed, Ms. Shavlik's complaint failed to allege a cognizable First Amendment retaliation claim. (12/21/18

Order at 14.) Specifically, the court stated that Ms. Shavlik alleged no facts suggesting that Judge Weiss entered the show-cause order for any reason other than the reason stated in the order—that Ms. Shavlik had filmed the Reed trial in violation of his order limiting videography to a single news outlet. (*Id.*) The court further stated that Ms. Shavlik did not allege facts sufficient to show that Defendants harbored a retaliatory motive or acted in a manner that would deter a reasonable person from engaging in protected First Amendment activities. (*Id.*)

Despite this ruling delineating the deficiencies in her claim, Ms. Shavlik adds only one substantive factual allegation to her First Amendment retaliation claim. Ms. Shavlik now alleges that "[i]n issuing his [show cause] order[,] Judge Weiss relied upon perjured testimony of [D]efendants Alsdorf and Sayles who claimed [that Ms. Shavlik] was in violation of [Judge Weiss's] order by filming, when they knew that the order only applied when KING-TV was present and filming." (FAC ¶ 3.39.) She relies on this new allegation and the allegation that Defendants acted in concert. (*See id.* ¶¶ 3.36-3.45.) These conclusory allegations concerning Defendants' testimony and knowledge and Judge Weiss's alleged reliance on that testimony, even when liberally construed, fail to pass the *Iqbal/Twombly* standard. *See Johnson*, 653 F.3d at 1011 ("Because [the plaintiff] proceeded *pro se* before the district court, we must construe his complaints liberally even when evaluating it under the *Iqbal* standard."). Further, Ms. Shavlik adds nothing to her already inadequate allegations that Mr. Sayles, a private attorney, acted in concert with Defendants to violate Ms. Shavlik's constitutional rights. (*Compare generally* FAC *with* Compl.)

More fundamentally, however, Ms. Shavlik fails to identify a First Amendment protected activity that was chilled or deterred by Defendants' alleged actions. *See Skoog*, 469 F.3d at 1232. She alleges that, on May 18, 2018, she "appeared as a member of the press seeking to videotape [the Reed trial]" (FAC at 10), and that Judge Weiss's show cause order "sought to punish [her], via sanctions, and/or threats of criminal prosecution" for that allegedly First Amendment protected activity (*id.* at 14). Yet, the Ninth Circuit has stated that "the media's right to gather information during a criminal trial is no more than a right to attend the trial and report their observations." *Radio & Television News Ass'n of S. Cal. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 781 F.2d 1443, 1447 (9th Cir. 1986) (internal quotation marks omitted) (citing *United States v. Hastings*, 695 F.2d 1278, 1280 (11th Cir. 1983)) (stating that the press's right of access is the right to attend and not to televise a criminal trial).

Further, numerous courts have upheld rules prohibiting photography and videography in the courtroom and found that such rules do not impermissibly infringe on the press's First Amendment right of access to judicial proceedings. *See United States v. Edwards*, 785 F.2d 1293, 1296 (5th Cir. 1986) ("Given the Supreme Court's indication that the First Amendment right of access to criminal trials does not extend to include a right to broadcast such trials, [the plaintiff's] First Amendment challenge to [court rules prohibiting photographs in the courtroom] must fail."); *Conway v. United States*, 852 F.2d 187, 188 (6th Cir. 1988) (upholding the constitutionality of court rules prohibiting broadcasting, telecasting, and photographing of judicial proceedings when faced with a First Amendment challenge); *United States v. Kerley*, 753 F.2d 617, 622 (7th Cir. 1985)

(finding the court's rule "ban[ning] . . . cameras in the courtroom to be a reasonable exercise of the rulemaking power and not in violation of [the plaintiff's] first amendment rights."); *Combined Commc'ns Corp. v. Finesilver*, 672 F.2d 818, 821 (10th Cir. 1982) ("The First Amendment does not guarantee the media a constitutional right to televise inside a courthouse."); *see also United States v. Moussaoui*, 205 F.R.D. 183, 185 (E.D. Va. 2002) ("[T]he First Amendment does not include a right to televise, record or otherwise broadcast federal criminal trial proceedings."). Ms. Shavlik never alleges that she was denied access to the courtroom during the Reed trial or the right to report on her observations. (*See generally* FAC.) The court therefore concludes that her allegations concerning Judge Weiss's show-cause order and the local rule limiting videography in the courtroom fail to state a First Amendment claim.

**F.     Fourteenth Amendment Claim**

Ms. Shavlik continues to press her Fourteenth Amendment due process claim. (Resp. at 7.) She argues that her allegations that Judge Weiss based his show-cause order on perjured testimony are sufficient to state a due process claim under the Fourteen Amendment. (*See id.*) As the court explained in its earlier order, "[t]he show-cause order satisfied the notice due under the Fourteenth Amendment and Washington law because it informed Ms. Shavlik of the time and place of the hearing, and the nature of the charges pending." (12/21/18 Order at 14-15 (internal quotation marks omitted) (citing *In re Marriage*, 737 P.2d 671, 704 (Wash. 1987); *Cherry v. City Coll. of S.F.*, No. C04-04981 WHA, 2007 WL 2904188, at *3 (N.D. Cal. Oct. 1, 2007)). Thus, Judge Weiss adequately provided Ms. Shavlik the opportunity to present evidence and argument

concerning the alleged perjured testimony and to otherwise show that a finding of contempt was not warranted. Further, Ms. Shavlik's allegation that she was "afraid to attend [the show-cause hearing] because she could not obtain counsel and might be jailed for improperly invoking her rights" is not plausible. (*See* FAC ¶ 3.40); *see also Iqbal*, 556 U.S. at 678. Judge Weiss's show-cause order expressly states: "Jail time is not being requested." (*See* OSC (Dkt. # 12-1) at 2.) Accordingly, the court dismisses Ms. Shavlik's Fourteenth Amendment due process claim.

## G.    State Law Claims

Ms. Shavlik alleges state law claims against all Defendants "except the prosecutors." (FAC at 15-16.) She alleges that Mr. Alsdorf, Mr. Matteson, and Mr. Roe are prosecutors. (*Id.* at 3.) By process of elimination, the court concludes that Ms. Shavlik alleges her state law claims against Snohomish County, Detective Fontenot, Mr. Sayles, and the Sayles Law Firm. (*See generally id.*) Ms. Shavlik alleges four state law claims in her amended complaint: (1) abuse of process; (2) intentional infliction of emotional distress; (3) deceptive trade violations; and (4) common law right to privacy. (*See id.* at 15-16.) The court addresses each of these claims in turn.

### 1.    Abuse of Process

In her original complaint, Ms. Shavlik alleged abuse of process against Mr. Sayles only, suggesting that he had used the contempt proceedings to retaliate against her for filming his interactions with a witness at the Reed trial. (Compl. at 19.) The court concluded that she alleged "no facts capable of supporting that conclusory allegation; nor . . . facts capable of showing Mr. Sayles somehow exerted influence over the contempt

proceedings." (12/21/18 Order at 30.) She argues that, with the additional allegations in her amended complaint that Judge Weiss relied upon perjured testimony from Mr. Alsdorf and Mr. Sayles in issuing his order to show cause, she has now adequately pleaded this claim. (*See* Resp. at 8.)

The mere institution of a legal proceeding even with a malicious motive does not constitute an abuse of process. *Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.)*, 82 P.3d 1199, 1217 (Wash. Ct. App. 2004). Instead, the "gist" of the action is the misuse or misapplication of the process, after it has once been issued, for an end other than that which it was designed to accomplish. *Id.* "In other words, the action requires 'a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.'" *Id.* (quoting *Batten v. Abrams*, 626 P.2d 984, 989 (Wash. Ct. App. 1981)).

Here, Ms. Shavlik never alleges that Judge Weiss's order to show cause or the subsequent hearing, which she declined to attend, culminated in the entry of a contempt order against her. (*See generally* FAC.) She does not allege how Defendants used either Judge Weiss's initial show-cause order or a contempt order, if any, as "a form of extortion" during negotiation after the lodging of the claim. *See Batten*, 626 P.2d at 989. Further, although she alleges in a conclusory fashion that Mr. Sayles, Mr. Alsdorf, and Mr. Matteson "abuse[d] the process . . . to stifle and punish free speech during the criminal trial" (FAC ¶ 3.42), the court has already concluded that she did not have a First Amendment right to film the trial, *see supra* § III.E., and she has not otherwise alleged

any impingement on her "free speech" rights (*see generally* FAC). Thus, the court concludes that Ms. Shavlik has failed to adequately plead her abuse of process claim and accordingly dismisses it.

2.    Intentional Infliction of Emotional Distress

The court dismissed Ms. Shavlik's claim for intentional infliction of emotional distress in her original complaint but granted her leave to amend the claim. (12/21/18 Order at 31.) The elements of the claim include: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress. *See Reid v. Pierce Cty.*, 961 P.2d 333, 337 (Wash. 1998); *Christian v. Tohmeh*, 366 P.3d 16, 30 (Wash. Ct. App. 2015). Ms. Shavlik now argues that "[w]ith the additional allegations that [Defendants] made misrepresentation to the court, along with the long history of retaliation [Defendants] have directed against her, [she] has now established the detail the court said was missing in her original complaint." (Resp. at 9.)

The court disagrees. Washington courts have repeatedly held that false accusations and the institution of allegedly false or harassing lawsuits are not sufficient to constitute the tort of outrage. For example, in *Lawson v. Boeing Co.*, 792 P.2d 545, 550-51 (Wash. Ct. App. 1990), the court held that false allegations of sexual harassment that resulted in the supervisor's demotion were insufficient to constitute intentional infliction of emotional distress. Likewise, in *Saldivar v. Momah*, 186 P.3d 1117, 1130-31 (Wash. Ct. App. 2008), the court held that the filing of a suit alleging sexual abuse by a physician, even with malicious intent, "is not 'so outrageous in character, [and so] extreme in degree, as to go beyond all possible bounds of decency' and to be 'utterly

intolerable in a civilized community.'" *Id.* at 1131 (quoting *Grimsby v. Samson*, 530

P.2d 291, 295 (Wash. Ct. App. 1975) (alterations in *Saldivar*). If the conduct in *Lawson*

and *Saldivar* was insufficient to state a claim for the intentional infliction of emotional

distress, Defendants' alleged conduct in wrongfully accusing Ms. Shavlik of filming

court proceedings in violation of Judge Weiss's order is also insufficient as a matter of

law. Further, none of the other allegations in Ms. Shavlik's amended complaint reach the

level of outrage required to state a claim for this tort. (*See generally* FAC.) Accordingly,

the court dismisses her claim for intentional infliction of emotional distress.

      3.     <u>Consumer Protection Act</u>

     The court liberally construed Ms. Shavlik's claim for "deceptive trade violations"

and "unfair competition" in her original complaint as a claim for unfair competition

under Washington's CPA and dismissed it with leave to amend. (12/21/18 Order at 32.)

Ms. Shavlik now argues that "[w]ith the additional allegations the [Defendants] made

misrepresentations to the court, along with the long history of retaliation [Defendants]

have directed against her, [she] has now established the detail the court said was missing

in her original complaint by showing [Defendants] interfered with her business as a

journalist." (Resp. at 10.)

     To state a claim under the CPA, a plaintiff must allege five elements: (1) "an

unfair or deceptive act or practice," (2) occurring "in trade or commerce," (3) "a public

interest," (4) "injury to the plaintiff in his or her business or property," and (5) "a causal

link between the unfair or deceptive act and the injury suffered." *Indoor*

*Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 17 (Wash. 2007)

(citing *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986)). An unfair or deceptive act is an act that deceives or "[has] the capacity to deceive a substantial portion of the public." *Indoor Billboard*, 170 P.3d at 18.

Ms. Shavlik again fails to allege a claim under the CPA. Even assuming that her allegations that Defendants perjured themselves constitute "a deceptive act" under the CPA, she has not alleged how Defendants' alleged testimony in a court proceeding could be said to occur in trade or commerce. *See Indoor Billboard/Wash., Inc.*, 170 P.3d at 17. Further, her only allegations concerning any injury to her business or property consist of stating that Defendants' actions "plac[ed] [her] and her business in a bad light within the court process." (FAC at 15.) As the court previously stated, this "is precisely the sort of 'unadorned, "the-defendant-unlawfully-harmed-me accusation"' that fails to satisfy the federal pleading standards." (12/21/18 Order at 33 (quoting *Iqbal*, 556 U.S. at 678).) Accordingly, the court grants Defendants' motion and again dismisses Ms. Shavlik's CPA claim.

### 4. Right of Privacy

In its prior order, the court rejected Ms. Shavlik's claim that Defendants violated her privacy under Article I, Section 7 of the Washington Constitution because the Washington Supreme Court has declined to recognize a private right of action under that provision. (12/21/18 Order at 26 (citing *Reid*, 961 P.2d at 342-43).) The court nevertheless granted Ms. Shavlik leave to amend her complaint to allege a common law violation of privacy claim. (*Id.*)

//

To establish an invasion of privacy claim, a plaintiff must prove the following elements: (1) "[A]n intentional intrusion, physically or otherwise, upon the solitude or seclusion of plaintiff, or his private affairs;" (2) "[W]ith respect to the matter or affair which plaintiff claims was invaded, that plaintiff had a legitimate and reasonable expectation of privacy;" (3) "[T]he intrusion would be highly offensive to a reasonable person; and" (4) "[T]hat the defendant's conduct was a proximate cause of damage to the plaintiff." *Doe v. Gonzaga Univ.*, 24 P.3d 390, 399 (Wash. 2001), *reversed on other grounds*, 536 U.S. 273 (2002) (relying upon *Restatement (Second) of Torts* § 652B (1977)); *see also McLenan-Kenny v. Washington Dep't of Labor & Indus.*, No. C13-6026 RBL, 2014 WL 1648501, at *3 (W.D. Wash. Apr. 24, 2014). Ms. Shavlik argues that from her allegations there is a "reasonable inference" that the purpose of Defendants' actions was "to thrust her into the limelight as a bad person in a highly publicized double murder case" resulting in the "private details" of her name and address being placed in the public record. (Resp. at 10.)

Despite Ms. Shavlik's assertions, she fails to state a claim for common law invasion of privacy. Liberally construing her claim, Ms. Shavlik alleges that Defendants perjured themselves before Judge Weiss to undermine Ms. Shavlik's ability to film and report on a criminal trial. (*See* FAC at 13.) Contrary to her assertions, these allegations do not allege a violation of her common law right to privacy. (*See id.* at 16.) Defendants' alleged acts do not intrude upon her solitude or seclusion or her private affairs. *See Doe*, 24 P.3d at 399. Nothing about her alleged attendance at, reporting on, or filming of a public criminal trial can be described as private; nor can she assert that she

has a legitimate expectation of privacy in these public acts. *See id.* The court, therefore,

grants Defendants' motion and dismisses her claim for common law invasion of privacy.

**H.    Leave to Amend**

Under Federal Rule of Civil Procedure 15(a)(2) , the court should "freely give

leave [to amend a pleading] when justice so requires," Fed. R. Civ. P. 15(a)(2), "and

should be granted more liberally to pro se plaintiffs," *McQuillion v. Schwarzenegger*, 369

F.3d 1091, 1099 (9th Cir. 2004). However, "[t]he [c]ourts discretion to deny an

amendment is 'particularly broad' where a plaintiff has previously amended his

complaint." *Renner v. Bank of Am., N.A.*, No. CV-14-08051-PCT-JAT, 2014 WL

4209254, at *2 (D. Ariz. Aug. 26, 2014) (quoting *Allen v. City of Beverly Hills*, 911 F.2d

367, 373 (9th Cir. 1990)). Indeed, *pro se* litigants are not entitled by law to multiple

opportunities to amend their pleadings. *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248

(9th Cir. 1995) (per curiam) (noting that "a pro se litigant is entitled to notice of the

complaint's deficiencies and an opportunity to amend prior to dismissal"). If factors such

as undue delay, bad faith, dilatory motive, undue prejudice, or futility of amendment are

present, leave to amend may properly be denied in the district court's discretion.

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003).

The court already gave Ms. Shavlik leave to amend her original complaint and

explained in detail the deficiencies found therein. (*See generally* 12/21/18 Order.) Her

amended complaint is also fatally deficient. *See supra* § III.A.-G. Although the court is

aware that Ms. Shavlik is a *pro se* litigant and understands the difficulties of navigating

the legal system without counsel, the court will not grant Ms. Shavlik leave to amend her

amended complaint because granting such leave would likely be futile.  After carefully

analyzing both Ms. Shavlik's original and amended complaints and her response the

present motion (*see* Compl., FAC, Resp.), the court discerns no facts that could

potentially support a claim for relief.  Accordingly, the court denies leave to amend and

dismisses Ms. Shavlik's amended complaint with prejudice.

## IV.    CONCLUSION

Based on the foregoing analysis, the court GRANTS Defendants' motion to

dismiss Ms. Shavlik's amended complaint (Dkt. # 27) and DISMISSES her action WITH

PREJUDICE.

Dated this 26th day of June, 2019.

JAMES L. ROBART
United States District Judge